UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JOHN SPEARS,

                                        Plaintiff,

        - versus -

THE CITY OF NEW YORK, FAWAD
KHAN, FRANK GALATI, MATTHEW
SAVAGE, ANDREW ERATO, DANIEL
SBARRA, GARY VANZANTEN, TINA
EVERETT, JANE DOE and JOHN DOE 1-10,

                                        Defendants.

MEMORANDUM
AND ORDER
10-CV-03461

---

A P P E A R A N C E S :

        PAUL HALE
                26 Court Street, Suite 913
                Brooklyn, NY 11201
                *Attorney for Plaintiff*

        MICHAEL A. CARDOZO
                Corporation Counsel of the City of New York
                100 Church Street, Room 2-141
                New York, NY 10007
        By:     Kimberly M. Savino
                Assistant Corporation Counsel
                *Attorney for Defendants City of New York, Fawad Khan, Frank Galati, Matthew
                Savage, Andrew Erato, Daniel Sbarra, Gary Vanzanten, and Tina Everett*

JOHN GLEESON, United States District Judge:

        Plaintiff John Spears brings this action against the City of New York (the "City")

and several named and unnamed New York Police Department ("NYPD") officers, both

individually and in their official capacities.  Spears's complaint appears to assert claims under 42

U.S.C. § 1983 for false arrest, malicious prosecution, excessive force, and unreasonable search

and seizure.[1]  For the reasons below, the defendants' joint motion for partial summary judgment is granted.  Spears's cross-motion for partial summary judgment is denied.

BACKGROUND

A.    *Facts*

The claims asserted in Spears's complaint stem from arrests occurring on April 26, 2008; October 10, 2009; and June 22, 2010.  The following facts are taken from Local Rule 56.1 statements, affidavits, deposition excerpts, and other documentary evidence submitted by the parties.  Unless otherwise noted, they are uncontroverted.

1.    *The April 26, 2008 Arrest*

On April 26, 2008, Officer Fawad Khan arrested Spears for criminal possession of a controlled substance in the seventh degree, in violation of New York Penal Law § 220.03.  *See* ECF No. 37, Ex. 12 ("Khan Stmt.").[2]  On April 27, 2008, in satisfaction of the charge stemming from that arrest, Spears pled guilty to disorderly conduct, in violation of New York Penal Law § 240.20, and was sentenced to a one-year conditional discharge.  *See* ECF No. 34, Ex. C ("Cert. of Disposition").  Apparently this conviction has yet to be invalidated, and Spears consents to dismissal of all claims related to this arrest.  *See* ECF No. 37, at 4 ("Pl.'s Mem.") (acknowledging that all claims stemming from the April 26, 2008 arrest "should be dismissed because plaintiff pled guilty to disorderly conduct, and plaintiff's conviction has not been invalidated" (capitalization omitted)).

---

[1]    Spears asserts generally in his complaint that his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights were violated, without specifying how each Amendment in particular was violated.

[2]    Spears attached 12 "exhibits" to his memorandum of law.  *See* ECF No. 37.  However, no affidavit or attorney declaration accompanied the exhibits.  Under this court's local rules, any party supporting or opposing a motion may file "affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion."  Local Rule 7.1(a)(3), (b).  There is no provision for filing freestanding exhibits unmoored to an affidavit or declaration made on personal knowledge.  *See* Fed. R. Civ. P. 56(c)(4).  Nonetheless, because their authenticity is not challenged and it does not affect the result I reach herein, I will consider Spears's exhibits to the extent I consider them relevant and identifiable.

2.    *The October 10, 2009 Arrest*

On October 10, 2009, Spears was arrested and charged with resisting arrest, in violation of New York Penal Law § 205.30, and attempted tampering with physical evidence, in violation of New York Penal Law §§ 110 and 215.40(2).  Second Am. Compl., ECF No. 24, ¶¶ 29-42 ("SAC"); ECF No. 28, at 1-2 ("Defs.' 4/23/2012 Ltr.").  Spears alleges that he lost his front tooth and sustained scrapes and bruises because the arresting officers – Detectives Frank Galati, Matthew Savage, and Andrew Erato – used excessive force.  SAC ¶¶ 32-34.[3]  On January 26, 2010, the charges against Spears stemming from this arrest were dismissed on speedy trial grounds.  *Id.* ¶ 42; Defs.' 4/23/2012 Ltr. at 2.

At oral argument, the parties agreed that none of the instant summary judgment motions relate to this arrest.  Accordingly, no evidence has been submitted to the court regarding this arrest, and I need not address it further.

3.    *The June 22, 2010 Arrest*

Defendants Sergeant Daniel Sbarra and Detective Frank Galati testified in their depositions that at about 6:00 P.M. on June 22, 2010, they observed Spears place a plastic bag of cocaine into his mouth while "walking down the street in a drug-prone location where there are coke spots on either corner of the location."  ECF No. 37, Ex. 3, at 125, 135 ("Sbarra Dep."); *accord* ECF No. 43, Ex. O at 99 ("Galati Dep.").  After seeing him swallow the bag of cocaine, Galati and Sbarra placed Spears under arrest for criminal possession of a controlled substance in the seventh degree, in violation of N.Y. Penal Law § 220.03, and for tampering with physical

---

[3]    Spears also alleges that "Erato knowing [sic] made false statements in the accusatory instrument in his attempt to maliciously prosecute plaintiff."  SAC ¶ 40.

evidence, in violation of N.Y. Penal Law § 215.40(2).[4]  At about 6:10 P.M., they transported him

to the police precinct in a prisoner van.  Sbarra Dep. at 135.

Sbarra described the street encounter in his deposition:

| | |
|---|---|
| Q: | What did you observe after you saw [Spears] walking on the sidewalk? |
| SBARRA: | I observed Spears look at us, and when he noticed us, he went into his pocket and put a ziplock of cocaine in his mouth. |
| Q: | How big was the ziplock? |
| SBARRA: | I'd say one-inch by one-inch. |
| . . . . | |
| Q: | Do you remember what color the bag was? |
| SBARRA: | It was a black ziplock of a white powdery substance. |
| Q: | And was it full? |
| SBARRA: | There was a quantity of cocaine in it. |
| . . . . | |
| Q: | When you saw him put it in his mouth, what did you do next? |
| SBARRA: | We got out of the car, we approached him, and we handcuffed him. |
| . . . . | |
| Q: | Was there ever a time you handcuffed [Spears] to a fence? |
| SBARRA: | Yes. |

---

[4]     Although the parties have not submitted any evidence reflecting which crimes Spears was arrested for on June 22, 2010, the defendants' letter requesting a pre-motion conference states that the arrest was predicated on these two crimes.  *See* Defs.' 4/23/2012 Ltr. at 2.

Q:            And why did you do that?

SBARRA:      Soon after while we were waiting for the prisoner van, he – he began sweating profusely. His eyes got wide. He was – he wasn't following directions. He was jittery. He was walking back and forth. He was told numerous times to stop moving, just stay still. He couldn't stay still, so instead of putting him to the floor and – and preventing him from moving, we decided to promote free breathing and put an additional set of handcuffs on hi[m] and attach it to the fence so he couldn't move in any other direction.

Sbarra Dep. at 122-124.

Similarly, Galati testified as follows:

Q:            What did you see [Spears] do?

GALATI:      I observed him taking a ziplock of a white powdery substance and place it in his mouth.

. . . .

GALATI:      . . . . He kept trying to walk off. I was still trying to conduct a field frisk and get pedigree information from him; and after numerous times of asking him to like stand still so we can do what we have to do, he kept trying to walk off, and I know he just swallowed drugs, and I didn't want to put him on the floor. I felt for – for breathing purposes it would be better if he was just standing, so I just cuffed him to the fence.

Galati Dep. at 99, 102.

As Sbarra explained, "it's Department procedure [that] if you swallow drugs you go to the hospital." Sbarra Dep. at 131.[5] Accordingly, Sbarra called two other officers – Detectives Gary Vanzanten and Tina Everett – to transport Spears to the hospital. Sbarra Dep. at

---

[5] *See also* Sbarra Dep. at 132 ("Every time we place an individual under arrest for swallowing drugs, he immediately goes to the hospital."). Similarly, Detective Tina Everett testified that "if we know that [an arrestee] ingested drugs, we're taking him to the hospital." ECF No. 37, Ex. 5, at 62 ("Everett Dep."). She was then asked, "No matter what?" and she responded, "Yes." *Id.*

129, 131; ECF No. 37, Ex. 4, at 63 ("Vanzanten Dep.").[6]  Both Galati and Sbarra explained to

Vanzanten and Everett that Spears had swallowed cocaine and that he had to be transported to

the hospital.  Galati Dep. at 107; Sbarra Dep. at 130; Vanzanten Dep. at 63.[7]

At approximately 6:30 P.M. that evening, Vanzanten accompanied Spears in an

ambulance from the police precinct to Woodhull Hospital.[8]  Vanzanten Dep. at 64, 66, 72;

Everett Dep. at 54.  Everett followed behind in a separate vehicle.  Vanzanten Dep. at 66.  They

arrived at the hospital at about 6:47 P.M.  *See* ECF No. 37, Ex. 11, at 3 ("Med. Recs.") (triage

intake time 6:47 P.M.); Vanzanten Dep. at 72 ("at" hospital at 7:00 P.M.); Everett Dep. at 54

("at" hospital at 7:00 P.M.).  Vanzanten explained both to the ambulance EMTs and to the

hospital staff that Spears had "ingested narcotics."  Vanzanten Dep. at 67, 68; *accord* ECF No.

37, Ex. 2, ¶ 6 ("Spears Dec.").  The hospital triage staff were also informed that Spears had

vomited twice, Med. Recs. at 3-4, although neither Sbarra nor Vanzanten recalls having seen

---

[6]      It is not entirely clear whether Vanzanten and Everett first joined up with Spears at the scene of the arrest or at the police precinct.  Sbarra testified that he called for Vanzanten and Everett to meet him at the precinct.  Sbarra Dep. at 129.  However, Vanzanten testified that he "was called to the scene," and that when he arrived he observed Spears "handcuffed behind his back and to a fence," and that "[e]ven being handcuffed he was kind of swaying back and forth, sweating profusely."  Vanzanten Dep. at 63.  Vanzanten later testified that he wasn't "one hundred percent" sure whether they transported Spears to the hospital from the scene of the arrest or from the precinct.  *Id.* at 66.  Vanzanten believed that Spears was first transported to the precinct in the prisoner van by Khan and Savage, and from there Vanzanten escorted Spears to the hospital in an ambulance.  *Id.* at 72.  Neither Vanzanten's nor Everett's memo book has any entry indicating that they ever went to the scene.  In both memo books, the first entry relating to Spears was the 6:30 P.M. transport from the precinct to the hospital.  *Id.*; Everett Dep. at 54.
[7]      Galati testified that he told "the detectives who took [Spears] to the hospital" that he had seen Spears swallow something.  Galati Dep. at 107.  Sbarra testified that although he did not recall exactly what he said, he was "sure" he said something along the lines of, "He swallowed drugs.  We've got to take him to the hospital."  Sbarra Dep. at 130.  Vanzanten testified, "At the time Sergeant Sbarra told myself and Detective Everett that we were going to be taking [Spears] to the hospital."  Vanzanten Dep. at 63.
[8]      Spears was processed at the 81st Precinct before being sent to the hospital.  *See* Vanzanten Dep. at 64 ("I'm 99 percent sure that he was brought to the 81st Precinct in the prisoner van, and from there we took the ambulance to Woodhull Hospital.").  Vanzanten's memo book reads that at "1830" he "transport[ed] perp, John Spears, to Woodh[u]ll Hospital."  *Id.* at 72.  At "1900" he was "at above."  *Id.*  Everett's memo book reads that at "1830" she "[t]ransported one male perp to WHH," which she explained is Woodhull Hospital, that "[t]he perp is John Spears," and that at 7:00 P.M. she was "at above," which she explained meant that she was "at Woodhull now."  Everett Dep. at 54.

Spears vomit or having told anyone that Spears had vomited. Sbarra Dep. at 126, 130; Vanzanten Dep. at 67, 68.[9]

At the hospital, Spears was handcuffed to a bed and was not allowed to use the bathroom. ECF No. 37, Ex. 1, at 146-47 ("Spears Dep."); *see also* Vanzanten Dep. at 73 (testifying that "[n]ormally" he handcuffs patients to hospital bed and that he would not have allowed Spears to use the restroom in this situation); Everett Dep. at 46 (explaining that arrestees at hospital "are never not handcuffed, never never"). Spears received a general medical examination and at least one x-ray examination. *See* Med. Recs. At approximately 12:30 A.M. on June 23, 2010, Vanzanten and Everett were relieved from duty, and Khan and Detective Matthew Savage took over.[10] Vanzanten Dep. at 72; Everett Dep. at 54; *cf.* Spears Dec. ¶ 12.

At 2:16 A.M., approximately eight hours after Spears's arrest,[11] the hospital took an x-ray of Spears's abdomen. Med. Recs. at 5. A report of that x-ray, produced at 2:30 A.M., read: "Nonspecific bowel gas pattern without evidence of obstruction or fecal impaction. No radiopaque foreign body." *Id.* A handwritten examination report created at 4:00 A.M. read, "XRay Abdomen: No evidence of FB. D/c in NYPD custody." *Id.* at 9. According to Spears, after receiving the results of the x-ray, the attending physician told Savage that there were no foreign objects in Spears's system. Spears Dec. ¶ 12.

At approximately 4:00 A.M., Spears was discharged from the hospital and transported back to the police precinct. Med. Recs. at 12; Spears Dec. ¶ 13; ECF No. 46, ¶ 15 ("Pl.'s 56.1 Stmt."); ECF No. 42, ¶ 15 ("Defs.' 56.1 Resp. Stmt"). Spears was then transported

---

[9]    Everett could not remember anything about the encounter with Spears, including whether she saw him vomit. Everett Dep. at 40.

[10]    Vanzanten's memo book entry reads, "0030, released by Detective Khan and Savage." Vanzanten Dep. at 72. Everett's memo book similarly reads that at 12:30 she and Vanzanten were relieved by Detectives Khan and Savage. Everett Dep. at 54.

[11]    According to Sbarra, Spears was first arrested at approximately 6:00 P.M. Sbarra Dep. at 135. Although the x-ray was apparently taken at 2:16 A.M., its "result time" is listed as 2:30 A.M. *See* Med. Recs. at 5.

to Brooklyn Central Booking at approximately 4:30 A.M.  Spears Dec. ¶ 13; Pl.'s 56.1 Stmt. ¶ 16; Defs.' 56.1 Resp. Stmt. ¶ 15.  At approximately 7:30 P.M. that evening, June 23, 2010, Spears was brought before an arraigning judge, and all criminal charges against Spears were dismissed by motion of the Kings County District Attorney's Office.  Pl.'s 56.1 Stmt. ¶ 17-18; Defs.' 56.1 Resp. Stmt. ¶ 17-18.

B.    *Procedural History*

On July 28, 2010, Spears filed a complaint against the City and unnamed police officers.  *See* ECF No. 1.  The City filed its answer October 26, 2010.  *See* ECF No. 6.  With leave from the court, Spears filed an amended complaint on April 18, 2011, adding a claim against the City pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and naming several additional officers as individual defendants.  *See* ECF No. 12.  Spears filed a second amended complaint on February 6, 2012, naming two additional officers as defendants.  *See* ECF No. 23.  The next day he filed a corrected second amended complaint to fix the spelling of Tina Everett's name.  *See* ECF No. 24.  Discovery closed on March 30, 2012.

On May 21, 2012, the defendants filed a motion for partial summary judgment. *See* ECF No. 32 ("Defs.' Mo."); *see also* ECF No. 35 ("Defs.' Mem.").  On June 12, 2012, Spears filed an opposition to the defendants' motion for summary judgment and a cross-motion for summary judgment.  *See* Pl.'s Mem.  The defendants filed a reply in support of their motion and in opposition to Spears's motion on July 10, 2012.  *See* ECF No. 41 ("Defs.' Reply"). Spears filed a reply in support of his motion on July 17, 2012.  *See* ECF No. 44 ("Pl.'s Reply"). Oral argument was held on July 27, 2012.

A.      *Standard of Review*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

To prevail on a 42 U.S.C. § 1983[12] claim, Spears must show that the defendants deprived him of a right secured by the Constitution or laws of the United States while acting under color of state law. *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004).

B.      *Analysis*

Defendants seek summary judgment on (1) all claims related to Spears's April 26, 2008 arrest; (2) all claims against Khan; (3) all claims against Vanzanten and Everett; and (4) all claims against the City brought pursuant to *Monell*. Spears cross-moves for summary judgment

---

[12]     Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"for his time incarcerated after medical professionals determined there were no foreign objects in his system after his June 22, 2010 arrest." Pl.'s Mem. at 2; Pl.'s Reply at 1.

1. *Dismissal of All Claims Deriving from the April 26, 2008 Arrest and All Claims Against Khan*

Defendants contend that any claims related to the 2008 arrest must be dismissed because Spears's conviction for disorderly conduct still stands. *See* Defs.' Mem. at 4-7 (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) ("A claim for damages . . . [related] to a conviction or sentence that has not been . . . invalidated is not cognizable under § 1983." (emphasis omitted))). Likewise, because all allegations against Khan are limited to the 2008 arrest, Khan seeks dismissal of all claims against him.

Spears does not contest this aspect of the defendants' motion. Spears writes, "Plaintiff concedes there are no claims arising out of the April 26, 2008 incident and there was no involvement of defendant Khan." Pl.'s Mem. at 2; *accord id.* at 4 ("Plaintiff's claims relating to his April 26, 2008 claim [sic] should be dismissed because plaintiff pled guilty to disorderly conduct, and plaintiff's conviction has not been invalidated. Plaintiff concedes there is no claim for the April 26, 2008 arrest." (capitalization omitted)). Spears's counsel confirmed again at oral argument that he consented to dismissal of all claims deriving from the 2008 arrest.

Accordingly, all claims based on the 2008 arrest and all claims against Khan are dismissed on consent.

2. *Cross-Motions for Summary Judgment on Spears's Claim for False Arrest for Continued Detention After the X-Ray During the June 22, 2010 Arrest*

The parties cross-move for partial summary judgment regarding Spears's arrest on June 22, 2010. Spears seeks partial summary judgment on his Fourth Amendment claim for the period of time that he remained detained after the radiologist reported that an x-ray of his

abdomen was negative for foreign bodies.  Pl.'s Mem. at 19-20.  He argues "that all probable cause immediately dissipated once it was determined by medical[] professionals that there was no contraband in his system."  Pl.'s Reply at 2.

For their part, the defendants move for partial summary judgment on all claims against Vanzanten and Everett.  The defendants argue that Vanzanten and Everett had no personal involvement in any of Spears's arrests, except for their role in transporting Spears to the hospital on June 22, 2010.  Because Spears was already handcuffed and under arrest by then, and Vanzanten and Everett were simply carrying out ministerial processing duties in transporting Spears to the hospital, the defendants argue that all claims against Vanzanten and Everett should be dismissed.

Although Spears's complaint does not specify which claims it purports to assert against Vantanten and Everett, counsel for Spears agreed at oral argument that his claims against Vanzanten and Everett were limited to a Fourth Amendment false arrest claim for the June 22, 2010 arrest.  Spears's counsel disavowed any excessive force or malicious prosecution claims against Vanzanten or Everett.[13]  Thus, Spears's claims against Vanzanten and Everett similarly relate only to the period during the June 22, 2010 arrest "after it was determined that there was no contraband in [Spears's] system."  Pl.'s Mem. at 5.

"The existence of probable cause to arrest . . . is a complete defense to an action for false arrest . . . under § 1983."  *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).[14]  Probable cause to arrest exists

---

[13]     Indeed, Spears's counsel explained at oral argument that Spears's excessive force claim was limited to his October 2009 arrest.

[14]     "A § 1983 claim for false arrest . . . is substantially the same as a claim for false arrest under New York law."  *Weyant*, 101 F.3d at 852 (internal citations omitted)); *see also Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004) ("In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred.").  To establish a claim for false arrest under § 1983, as under New York law, a plaintiff must show that "the defendant intentionally confined him without his consent and without justification."

when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (quoting *Weyant*, 101 F.3d at 852). In determining whether an arrest was supported by probable cause, "courts must consider those facts available to the officer at the time of the arrest and immediately before it." *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). Probable cause is a "fluid concept," and must be assessed based on "the totality of the circumstances." *Id.* (quoting *Panetta*, 460 F.3d at 395). "Probable cause may . . . exist [even] where the officer has relied on mistaken information, so long as it was reasonable for him to rely on it." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). Although "an officer may not disregard plainly exculpatory evidence," *Panetta*, 460 F.3d at 395, probable cause "does not require absolute certainty," *Fabrikant*, 691 F.3d at 214 (quoting *Panetta*, 460 F.3d at 395), and need not reach the level of evidence necessary to support a conviction, *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983). It is "of no consequence" in a probable cause determination "that a more thorough or more probing investigation might have cast doubt upon the situation." *Fabrikant*, 691 F.3d at 214-15 (quoting *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989)).

In addition, "[w]hen making a probable cause determination, police officers are entitled to rely on the allegations of fellow police officers." *Panetta*, 460 F.3d at 395 (internal quotation marks and citations omitted). The so-called "imputed knowledge doctrine" provides that "[a]bsent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful." *Id.* (internal quotation marks omitted); *accord*

---

*Weyant*, 101 F.3d at 852. "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest . . . ." *Id.*

*United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) ("Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation."). Thus, "[t]he determination of probable cause does not turn on whether the fellow agent's observations were accurate, but on whether the arresting agent was reasonable in relying on those observations." *Panetta*, 460 F.3d at 395 (internal quotation marks and alterations omitted).

For purposes of Spears's motion, he does not contest that the officers who initially arrested him on the street on June 22, 2010, possessed probable cause to arrest him. Pl.'s Mem. at 19 n.5; Pl.'s Reply at 2 & n.1. Instead, he contends that even if probable cause existed at the time of his initial arrest, such probable cause dissipated when the x-ray results revealed no contraband in his system, and thus at that point in time he should have been immediately released. He thus seeks summary judgment on a false arrest claim for the additional 20 hours that he was detained after his negative x-ray results.[15]

"[O]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Panetta*, 460 F.3d at 396 (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)). An officer "does not have to prove plaintiff's version wrong before arresting him. Nor does it matter that an investigation might have cast doubt upon the basis for the arrest." *Id.* (quoting *Curley*, 268 F.3d at 70). "[O]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor,

---

[15]     Spears states in his memorandum that he was detained an additional 20 hours after the x-ray results were received, and defendants do not dispute that figure. *See* Pl.'s Mem. at 19. However, by my calculations, the detention was closer to 15 hours: from 2:30 A.M. until 7:30 P.M. on June 23, 2010.

judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Id.* (quoting *Krause*, 887 F.2d at 372).

Courts have observed in the malicious prosecution context that "even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996). Even in that context, however, for probable cause to dissipate, the defendants must discover some intervening fact that exposes the groundless nature of the charges. *Mitchell v. Cnty. of Nassau*, 786 F. Supp. 2d 545, 562 (E.D.N.Y. 2011) (holding that plaintiff had not alleged any intervening facts which would have made defendants aware that the charges were groundless). Otherwise, probable cause at the time of arrest continues to exist through a prosecution. *Id.*; *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007).

Spears has failed to put forth evidence of an intervening fact that necessarily dissipated probable cause. In his motion, he relies exclusively on the radiologist's report stating that the x-ray of Spears's abdomen did not detect any radiopaque foreign body. However, on its own, this report is insufficient to establish with certainty that Spears did not in fact possess or ingest cocaine. The arresting officers attested to having personally witnessed Spears possess and ingest cocaine and subsequently begin to sweat profusely and become jittery and unable to remain still, *e.g.*, Sbarra Dep. at 124; these first-hand observations provided the basis of probable cause for Spears's arrest, and the officers who detained Spears at the hospital were entitled to rely on the observations and probable cause determinations of their fellow officers, "[a]bsent significant indications to the contrary." *Panetta*, 460 F.3d at 395.

Moreover, the record does not demonstrate that the x-ray results dissipated this preexisting probable cause. Spears has submitted *no* evidence of the x-ray's significance to the

14

probable cause calculation faced by the officers. He appears to simply assume that the x-ray conclusively and self-evidently proves that he had not ingested cocaine and that the arresting officers must have lied about their observations at the scene. However, the record evidence compels no such conclusion. First, Spears has failed to put forth any evidence supporting this conclusion as a medical matter – evidence such as whether a ziplock bag of cocaine would necessarily appear in an x-ray of an abdomen; the effect of the passage of time on this question; what other tests a medical professional would undertake before concluding no such ingestion had taken place; or whether the x-ray was even undertaken for the purpose of confirming or dispelling the presence of the ziplock of cocaine. Indeed, the report itself, in addition to reporting that "[n]o radiopaque foreign body" was detected, provided a diagnosis: "Residual foreign body in soft tissue." Med. Recs. at 5. Without any medical testimony to illuminate its meaning, this report is far from indubitable proof that no ingestion had taken place; indeed, the diagnosis permits an inference that the radiologist did not rule out ingestion, but merely concluded the foreign body was lodged within Spears's soft tissue.

Further, even if Spears could show that the x-ray conclusively demonstrated to trained medical professionals that he had not ingested a ziplock of cocaine within the last eight hours, Spears has not put forth any evidence that this medical conclusion was conveyed to the officers, who are untrained in medicine. Spears says generally that "the treating physician [told] the officers guarding me that there was no foreign objects in my system." Spears Dec. ¶ 12. Yet not even Spears's testimony suggests that the officers were informed that the test results meant that Spears's ingestion of cocaine eight hours before was a medical impossibility. Thus, even if the officers learned the results of the x-ray, there is no reason on the current record to charge

them with understanding the full medical ramifications of the x-ray – including the conclusion that their fellow officers' first-hand observations must have been mistaken or falsified.

In fact, none of the officers appeared to consider the hospital tests to be relevant to their probable cause calculation. The officers each consistently suggested that the x-rays and other medical treatment were undertaken for a therapeutic rather than investigative purpose. Sbarra testified that all arrestees who swallow contraband are immediately sent to the hospital as a matter of "[d]epartment procedure." Sbarra Dep. at 131-32. Everett likewise testified that "if we know [a suspect] ingested drugs, we're taking him to the hospital," but that she did not know how often the x-ray comes up negative because "we don't even ask." Everett Dep. at 62. She explained that some hospitals tell the officer the test results, and some do not – it all depends on the hospital and doctor. *Id.* at 63. Vanzanten testified that only a doctor can determine whether someone did or did not swallow drugs. Vanzanten Dep. at 76. None of the officers viewed the test results as a means to confirm or dispel probable cause. Thus, even if the x-ray results scientifically eliminated the possibility that Spears had ingested contraband, the evidence does not support the conclusion that a negative report would necessarily alert the accompanying officers that Spears's arrest was groundless.

Accordingly, I find that the negative x-ray was insufficient on its own to negate the probable cause to arrest Spears. The officers at the hospital were entitled to rely on the observations and probable cause determinations of their fellow officers, and thus had a reasonable belief that Spears had possessed and ingested cocaine. The mere fact that an x-ray of Spears's abdomen eight hours later revealed no radiopaque foreign bodies is insufficient to vitiate this probable cause without further evidence that (1) this x-ray result conclusively establishes that Spears could not have ingested a ziplock of cocaine eight hours before; and (2)

this medical conclusion (and not merely the negative x-ray result) was conveyed to the officers responsible for Spears's continued detention. Even assuming that the radiologist's report tended to exculpate Spears, police officers have no obligation to determine the ultimate guilt of the people they arrest by "sifting and weighing information," and investigating every "plausible claim of innocence"; "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Panetta*, 460 F.3d at 395-96, 398.

Thus, Spears's motion for partial summary judgment is denied, because, at least on this record, I find that the officers continued to have probable cause to arrest Spears even after the x-ray results were released at around 2:30 A.M. on June 23, 2012.[16] The cases cited by Spears do not suggest otherwise. Spears heavily relies on cases involving border searches of suspected drug couriers. *See* Pl.'s Mem. at 20 (citing *Velez v. United States*, 693 F. Supp. 51 (S.D.N.Y. 1988); *Adedeji v. United States*, 782 F. Supp. 688, 700 (D. Mass. 1992); *United States v. Montoya de Hernandez*, 473 U.S. 531 (1985)). These cases are inapposite, because in those cases, the detentions were supported by only reasonable suspicion rather than probable cause, and the x-rays had an expressly investigative purpose: The officers had an obligation to quickly confirm their suspicion of internal narcotics smuggling or to dispel their suspicion and release the suspect at the earliest opportunity. *See Velez*, 693 F. Supp. at 57. By contrast, here the officers already possessed probable cause to arrest Spears and had no continuing investigative obligation to quickly confirm or dispel any suspicion on pain of releasing Spears.

For the same reason, I grant summary judgment in favor of Vanzanten and Everett. Spears admits that Vanzanten and Everett had no involvement in his initial arrest on

---

[16] I emphasize that my conclusion here is limited to the record before me. I do not hold that a negative x-ray could *never* negate probable cause to arrest for suspected ingestion of narcotics. I merely hold that on this record, there is no evidence that the x-ray carried such medical significance or that the officers were alerted to that significance.

June 22, 2010. Their only involvement was in transporting Spears to the hospital at the instruction of an arresting officer after he was already in custody. In detaining Spears, Vanzanten and Everett were permitted to reasonably rely on the observations of the arresting officers. *See Colon*, 250 F.3d at 135. Even assuming that the arresting officers were mistaken or lying in claiming that they had witnessed Spears swallow cocaine, there is no evidence in the record to doubt the reasonableness of Vanzanten's and Everett's reliance on the arresting officers' claim. *See Panetta*, 460 F.3d at 395 ("The determination of probable cause does not turn on whether the fellow agent's observations were accurate, but on whether the arresting agent was reasonable in relying on those observations." (quotation omitted)). Thus, Vanzanten and Everett had probable cause to detain Spears based on the representations of the arresting officers, and they did not lose that probable cause merely because an x-ray at 2:30 A.M. added some potentially exculpatory evidence to the total mix of available information.[17] As explained above, an officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Panetta*, 460 F.3d at 396 (internal quotation marks omitted).

---

[17]     Moreover, it is evident from the record that Spears was no longer in the custody of Vanzanten and Everett at the time of the radiologist report, and thus they would not be responsible for his continued detention even if it was unlawful. Both Vanzanten's and Everett's memo books indicate they were relieved from duty at 12:30 A.M. by Khan and Savage. Vanzanten Dep. at 72; Everett Dep. at 54. The x-ray report was created some two hours after that, at 2:30 A.M. *See* Med. Recs. at 5. Indeed, even Spears stated that it was Savage – not Vanzanten or Everett – who was informed of the x-ray results. *See* Spears Dec. ¶ 12 ("I remember the treating physician telling the officers guarding me that there was no foreign objects in my system. I believe that one of the officers there was Det. Matthew Savage. Det. Savage was informed by the doctor and myself that there was no foreign objects or drugs in my system."). Thus, even if the x-ray results conclusively vitiated probable cause, Vanzanten and Everett are not liable for false arrest because they were not the officers responsible for Spears' continued detention after the release of the x-ray results.

Spears requests in his reply that "If for some reason these were not the officers present at the time of Mr. Spears['s] discharge from the hospital, plaintiff asks the Court [for] leave to add the officers who were present at this time, as we are still well within the statute of limitations." Pl.'s Reply at 2. The Second Circuit looks disfavorably upon motions to amend a complaint made after all discovery has been completed and a summary judgment motion has been filed. *See Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985). Moreover, the claim – even if it were asserted against the correct officer – would fail for the reasons I have detailed above. Accordingly, Spears's alternative motion to amend his complaint, asserted for the first time in his reply brief, is denied.

3. *Spears's Municipal Liability Claim*

Spears's most recent pleading – the corrected Second Amended Complaint, ECF No. 24 – asserts a municipal liability claim against the City of New York based on its purported failure to track lawsuits and civilian complaints to find patterns of police misconduct.  SAC ¶¶ 78-91.  Spears alleges that "a disturbing number of [the City's] police officers unlawfully bring charges against citizens with no legal basis, use excessive force against citizens and create charges in an effort to cover up their misconduct, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. . . . All of the aforementioned has created a climate where police officers and detectives lie to prosecutors, in police paperwork and charging instruments, and testify falsely, with no fear of reprisal."  *Id.* ¶¶ 87-88.

The defendants move to dismiss Spears's municipal liability claims on two grounds: (1) Spears added the municipal liability claim without obtaining proper leave of the court in violation of Fed. R. Civ. P. 15; and (2) Spears's allegations fail to state a claim for relief.

a. *Procedural Ground*

I first address the defendants' argument that Spears's municipal liability claim is procedurally defective for having been added in violation of Fed. R. Civ. P. 15.  On July 28, 2010, Spears filed his initial complaint against the City and several unnamed NYPD officers. Although the complaint did not specifically allege a *Monell* claim, it named the City as a defendant, and stated that the defendants' conduct "constituted a custom, usage, practice or rule of" the City.  ECF No. 1, ¶ 60.  On April 12, 2011, while the parties were in discovery, Spears made his first motion to amend the complaint, in which he stated, "I am seeking leave to amend the complaint and add an incident that occurred on April 26, 2008 involving Det. FAWAD

KHAN." ECF No. 10. Over the defendants' opposition, Magistrate Judge Reyes granted the motion to amend, ruling in a docket entry: "Defendants['] having failed to identify any prejudice resulting from the proposed amendment, the motion is granted. Plaintiff to amend the complaint and serve the officers involved no later than April 26, 2011." Order dated April 14, 2011.

On April 18, 2011, Spears filed his first amended complaint, which added claims related to the April 26, 2008 arrest and named Fawad Khan, Frank Galati, Matthew Savage, Andrew Erato, and Daniel Sbarra as additional defendants. *See* First Am. Compl. ¶¶ 9-13, 17-28, ECF No. 12. Plaintiff also specifically added a *Monell* municipal liability claim. *Id.* ¶¶ 78-91. In answering the first amended complaint, defendants declined to respond to the substance of Spears's *Monell* claim, stating only that "to the extent plaintiff purports to allege a Monell claim, plaintiff was not granted leave to add additional claims and therefore, no response is required." ECF Nos. 15, 16.

On January 30, 2012, Spears filed another motion to amend his complaint, explaining that he was "seeking leave to amend the complaint a final time to add new parties and to perfect the pleadings. This request is stemming from the *Monell* claim that is pleaded in the complaint and amended complaint." ECF No. 22, at 2. On January 31, 2012, Magistrate Judge Reyes held a conference which addressed, *inter alia*, Spears's motion to amend his complaint. A minute order entered after the conference formalized the judge's ruling granting plaintiff leave to amend, stating simply: "granting . . . Motion to Amend/Correct/Supplement. Second Amended Complaint to be filed by 2/10/2012; adding the two officers involved on the underlying incidents." Minute Order dated Jan. 31, 2012. On February 7, 2012, Spears filed his Second Amended Complaint, which added Vanzanten and Everett as defendants. *See* SAC ¶¶ 14-15. The Second Amended Complaint again included a *Monell* claim against the City. *Id.* ¶¶ 78-91.

In their Answer, the defendants again chose not to respond to Spears's *Monell* claim in any substantive fashion.

In the Second Circuit, "[a]bsent undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility, the motion [to amend] should be freely granted." *Alexandre v. Town of Hempstead*, 275 F.R.D. 94, 97 (E.D.N.Y. 2011) (citation omitted). The decision as to whether to permit an amendment is "soundly vested in the discretion of the district court." *Id.*

In their motion, the defendants have failed to identify any undue prejudice that resulted from the addition of the *Monell* claim. Defendants had ample time to investigate the claim, which was suggested in Spears's original complaint, and formally added in his first amended complaint on April 18, 2011, nearly a year before the close of discovery on March 30, 2012. Moreover, the procedural history indicates that Judge Reyes permitted Spears to amend his complaint to add the *Monell* claim. Accordingly, I find no violation of Rule 15, and the defendants' motion to dismiss Spears's *Monell* claim on this procedural ground is denied.

b.       *Merits*

The defendants argue in the alternative that Spears's *Monell* claim should be dismissed for failure to state a claim.[18] Under the rule articulated by the Supreme Court in *Monell*, a municipality may not be held liable under § 1983 on the basis of *respondeat superior*. *Monell*, 436 U.S. at 694-95. Rather, the plaintiff must demonstrate that "the municipality *itself* cause[d] the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Thus, "[t]o hold a city liable under § 1983 for the unconstitutional actions of its

---

[18]       In mounting this argument, the defendants' motion papers rely on pleading standards and refer to defects in Spears's "allegations," suggesting they intend to move to dismiss Spears's *Monell* claim pursuant to Fed. R. Civ. P. 12(b)(6). *See* Defs.' Mem. at 14. However, because discovery in this case is complete, and the motion is labeled as one for partial summary judgment, I will treat the motion as one pursuant to Fed. R. Civ. P. 56.

employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).

A plaintiff may demonstrate the existence of a municipal policy or custom in four possible ways: "(1) the existence of a formal policy officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees." *Prince v. Cnty. of Nassau*, 837 F. Supp. 2d 71, 103 (E.D.N.Y. 2011) (quoting *Williams v. City of Mt. Vernon*, 428 F. Supp. 2d 146, 159 (S.D.N.Y. 2006)).

Spears vacillates in his identification of the municipal policy to which he objects. His pleading relies on the City's "deliberate indifference" to generalized lawlessness in the police force. SAC ¶¶ 87-91. In particular, Spears cites the number of lawsuits that have been filed against each individual officer as evidence that the City "fail[s] to take corrective action" in the face of violations of citizens' constitutional rights. These general allegations clearly do not rise to the level of a specific policy or custom to which Spears's constitutional injury is attributable.[19] Further, Spears makes no attempt to connect this policy of deliberate indifference

_____

[19]    Spears singles out Sbarra's lack of discipline as particularly troubling, stating that "Sgt. Sbarra . . . was never disciplined despite having at least twelve lawsuits filed against him and his team. Furthermore, Sgt. Sbarra never once disciplined a single subordinate during his nine years as Sergeant in Brooklyn North Narcotics Bureau." Pl.'s Mem. at 11; *see also id.* at 16 ("Sgt. Daniel Sbarra's duties as supervisor have not been modified as a result of his multiple lawsuits filed against him and he continues to hold a leadership and supervisory role over subordinate policy officers[, which] . . . sends a message to new police officers that the City of New York tolerates civil rights violations."). Spears also complains that "if [Sbarra] is ever disciplined[,] Commissioner Ray Kelly

22

to any of his particular injuries, simply asserting that the policy led to all of the following: "[a]n arrest not based upon probable cause; [u]nwarranted and malicious criminal prosecution; [d]eprivation of liberty without due process of law; [e]xcessive force imposed upon him; [s]ummary punishment imposed upon him; and [d]enied equal protection under the law."  SAC ¶ 91.  A general allegation that the City has a policy of violating citizens' constitutional rights, and general claims that such a policy had the effect of violating a host of the plaintiff's rights without specifying how or why, is insufficiently particularized to state a claim against a municipality under *Monell*.

In his opposition brief, Spears appears to shift the basis of his *Monell* claim to an alleged NYPD policy of not "follow[ing] up on an arrestee undergoing tests at a hospital who is alleged to have swallowed drugs, thereby prolonging [the arrestee's] confinement once it has been determined a crime was not committed."  Pl.'s Mem. at 12-13; *see also* Pl.'s Reply at 5 (challenging City's "policy and practice of holding prisoners despite the fact there is no contraband in their system").  A policy or custom of deliberately not following up on test results that could exonerate and accelerate the release of arrestees could theoretically constitute an unconstitutional policy actionable under *Monell*.

However, there is no evidence here on which a jury could reasonably find that such a policy existed.  As discussed above, even with respect to the only particular incident alleged, Spears has failed to demonstrate as a matter of law that the test results indeed exonerated the arrestee.  No jury could reasonably conclude on the record advanced by Spears that the City

---

either exonerates or promotes him," citing two incidents in which the Commissioner dismissed a substantiated Civilian Complaint Review Board charge against Sbarra, and promoted Sbarra to lieutenant four months after he pled guilty to an internal affairs complaint.  Pl.'s Mem. at 11.  However, "the failure to discipline a single officer cannot give rise to an inference of deliberate indifference without further evidence of a municipal policy or practice."  *Longin ex rel. Longin v. Kelly*, 875 F. Supp. 196, 201 (S.D.N.Y. 1995).

had a policy or custom of retaining prisoners in custody despite the availability of tests that exonerate them. Accordingly, the *Monell* claim is dismissed.

CONCLUSION

Spears's motion for partial summary judgment on his claim for false arrest is denied. The defendants' motion for partial summary judgment is granted, and the following claims are dismissed: all claims stemming from Spears's April 2008 arrest; all claims against defendants Khan, Vanzanten, and Everett; and all claims against the City.


So ordered.


John Gleeson, U.S.D.J.

Dated: October 9, 2012
      Brooklyn, New York